IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CROWN CORK & SEAL USA, INC.,** | CIVIL ACTION |
| *Plaintiff,* | NO. 25-06887 |
| v. | |
| **DM TRANS, LLC d/b/a ARRIVE LOGISTICS and SPG TRANSPORTATION, INC.,** | |
| *Defendants.* | |

## COMPLAINT

Plaintiff Crown Cork & Seal USA, Inc, by and through its undersigned counsel, Dilworth Paxson LLP, files this Civil Action Complaint against Defendants DM Trans, LLC d/b/a Arrive Logistics and SPG Transportation, Inc., and avers as follows:

## PARTIES

1. Plaintiff Crown Cork & Seal USA, Inc. ("Crown") is a corporation formed under the laws of the state of Delaware, with its principal place of business at 14025 Riveredge Dr., Tampa, FL 33637. Crown also maintains offices at 770 Township Line Rd Ste 100, Yardley, PA 19067.

2. Upon information and belief, Defendant DM Trans, LLC d/b/a Arrive Logistics ("Arrive") is a corporation duly organized and existing under the laws of the state of Texas, with its principal place of business at 7701 Metropolis Drive, Building 15, Austin, Texas 78744.

3. Arrive provides commercial motor vehicle transportation for compensation throughout the United States.

4. Upon information and belief, Defendant SPG Transportation, Inc. ("SPG") is a corporation duly organized and existing under the laws of the state of California, with its principal place of business at 26788 Fir Avenue, Moreno Valley, California, 92555.

5. SPG provides commercial motor vehicle transportation for compensation throughout the United States.

## JURISDICTION AND VENUE

6. This case is governed by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 (the "Carmack Amendment"), because it concerns goods damaged by a motor carrier during the interstate shipment of goods.

7. Thus, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

8. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

9. The Court has personal jurisdiction over Defendants Arrive and SPG under Pennsylvania's long-arm statute, 42 Pa. C.S.A. § 5322, as Defendants have the requisite minimum contacts with the forum to comport with the Due Process Clause of the United States Constitution, including by continuously and systematically transporting (and/or facilitating) shipments of goods to, from, and through Pennsylvania.

10. Additionally, Arrive consented to the jurisdiction of this Court in the Transportation Service Agreement ("Agreement") entered into with Crown. A true and correct copy of the Agreement is attached hereto as "**Exhibit A.**"

11. Venue is proper pursuant to the venue provisions of the Carmack Amendment, 49 U.S.C. § 14706(d), because Pennsylvania is a state through which Arrive and SPG operate.

12. Alternatively, venue is proper in the Eastern District of Pennsylvania pursuant to the Agreement, whereby it was agreed that "Any claim or dispute arising from or in connection with this agreement, whether under federal, state, local, or foreign law, shall be brought exclusively and solely in the state or federal courts serving Philadelphia, Pennsylvania. The Parties hereby consent to the jurisdiction and venue of such courts." *See* Ex. A, Dispute Resolution.

13. The Agreement expressly waived the venue provisions of the Carmack Amendment.

## FACTS

### Crown's Business and the Transportation Service Agreement with Arrive

14. Crown is in the business of, *inter alia*, manufacturing and selling goods used in the assembly of canned food and beverages.

15. The nature of Crown's business requires it to adhere to strict food safety standards, and certify that its products are safe for use.

16. Crown manufactures and sells aluminum can-ends that are used to assemble canned beverages, *e.g.* soda and alcoholic beverages.

17. The slightest damage to aluminum can-ends disrupts its end-customers' assembly processes, compromises the integrity of the manufacturing process, and leads to safety issues, including but not limited to leakage and the failure to properly seal. Furthermore, the failure to safely and properly deliver can-ends can result in contamination, *e.g.*, exposure to rodents, chemicals, and other substances, that also leads to food safety issues.

18. Crown and Arrive entered into a Transportation Service Agreement ("Agreement") on or about November 4, 2021. *See* Ex. A.

19. Pursuant to the Agreement, Arrive agreed to accept goods for shipment tendered by Crown and arrange for transportation of Crown's goods as a "Transportation Provider," "Carrier," and "Broker."

20. "Pursuant to 49 U.S.C. § 14101"—which permits carriers and shippers to waive any or all rights under 49 U.S.C. Subtitle IV, Part B, including the Carmack Amendment—Crown and Arrive agreed that "Shipper and Carrier . . . expressly waive any and all rights and remedies under the ICC Termination Act, for the services provided under this Agreement . . . to the extent those rights and remedies conflict with the terms and conditions of this Agreement." *See* Ex. A, Scope of Agreement.

21. The Agreement contains numerous provisions under which Arrive conspicuously accepts responsibility for ensuring the delivery of Crown's goods, and which place liability for damage to Crown's goods squarely upon Arrive:

- "If Shipper tenders a specific load to Transportation Provider as a Carrier and Carrier is unable to transport that load . . . it may 'broker' or subcontract the performance . . . to another authorized motor carrier (the 'Selected Carrier') *but shall remain directly liable to Shipper pursuant to these terms and conditions for any and all acts or omissions of the Selected Carrier.*" Ex. A, Transportation Provider Obligations and Representations.

- "Whenever Broker or Carrier [Arrive], acting as a property broker . . . arranges with a Selected Carrier . . . As between the Parties, Broker shall assume liability as a motor common carrier (*i.e.,* Carmack Amendment liability) for purposes of this Agreement for all loss, damage, or delay to Shipper's Goods." Ex. A, Broker Obligations and Representations.

4

- "Transportation Provider shall be liable to Shipper for loss, damage or undelivered lading occurring while in its possession, custody, or control, *or that of any Selected Carrier or Substitute Carrier* that Transportation Provider has engaged . . . Transportation Provider's possession, custody, or control of lading under this Agreement shall begin when Carrier or Selected Carrier has executed the freight documentation." Ex. A, Cargo Liability.

### The Damaged Shipment

22. On January 19, 2025, Crown contacted Arrive to handle the transportation of a shipment of over seven million (7,000,000) aluminum can-ends from Crown's facility in Winchester, Virginia to its customer, Kalil Bottling, located in Tucson, Arizona.

23. Crown issued two bills of lading for the shipment of 705,280 can ends and 6,347,520 aluminum can ends (the "Goods") to Kalil Bottling.

24. Arrive signed the bills of lading, pursuant to which Arrive was designated as "Carrier," and accepted the goods in apparent good order. True and correct copies of the bills of lading are attached hereto as "**Exhibit B.**"

25. Pursuant to the bills of lading, Arrive was to transport the Goods to Kalil Bottling by January 24, 2025. *See* Ex. B.

26. Arrive, without Crown's knowledge, arranged for Defendant SPG to haul the Goods from Virginia to Arizona.

27. SPG began transporting the Goods, which were loaded onto twenty pallets, via truck and trailer on or about January 19, 2025

28. On January 20, 2025, the SPG truck hauling the Goods was involved in an accident. The trailer containing the Goods incurred significant damage.

29. The damaged SPG trailer was transported to a repair shop in Bunker Hill, West Virginia.

30. On January 31, 2025, representatives from Crown traveled to West Virginia to inspect the Goods, which were still inside the damaged trailer.

31. Upon entering the inside of the trailer, Crown observed that the pallets containing the Goods shifted inside the trailer, broke the straps on all observable pallets, and crashed into adjacent pallets and the walls of the trailer, causing the starboard wall of the trailer to bend outwards.

32. All pallets appeared damaged, and numerous bags containing the Goods were broken, leaving can-ends damaged and strewn about the floor of the trailer.

33. Crown observed that many can ends, both on the floor and still inside the original packaging, were bent from their originally manufactured shape.

34. The trailer was so severely damaged that upon completing the inspection, Crown's representatives were unable to properly close the rear doors to adequately reseal the trailer.

35. After the first inspection, the damaged trailer, which still contained the Goods, was moved to Hampton, New Jersey.

36. On January 22, 2025, Crown timely submitted a loss and damage claim to Arrive for $140,893.79, the full invoice value of the damaged Goods, reflecting a total loss (the "Claim"). A true and correct copy of the Claim is attached hereto as "**Exhibit C**."

37. Crown and Arrive exchanged numerous emails after the first inspection regarding Crown's Claim. Arrive insisted that before it could approve the Claim, Crown perform a second inspection of the Goods.

38. On July 16, 2025, Crown representatives traveled to New Jersey to perform a second inspection.

6

39. Crown confirmed the findings of its first inspection, namely, that the accident caused the pallets to collide with one another, which caused substantial damage to the can-ends and left open bags littered on the floor.

40. Furthermore, because the trailer was never properly re-sealed by Arrive or SPG after the first inspection, the can ends were exposed to contamination between January and July.

41. On August 1, 2025, Crown contacted Arrive regarding the results of the inspection.

42. Crown advised Arrive that the Goods were not saleable to Crown's customers under any circumstances due to damage and contamination. Crown further advised that the Goods could not be salvaged, repacked or reused.

43. As a result, Crown suffered a total loss of the Goods in the amount demanded in the Claim.

44. Nevertheless, Arrive refused to approve and pay Crown's Claim.

45. Thereafter, Crown issued numerous additional demands to Arrive, all of which were denied.

46. On October 20, 2025, Arrive sent a letter to Crown confirming that it was denying Crown's Claim and considered the matter closed. In that letter, for the first time, Arrive contended that SPG, and not Arrive, is responsible for Crown's loss.

47. Upon information and belief, prior to the accident involving the Goods, Arrive has never denied a loss and/or damage claim on the basis that another carrier was purportedly liable.

### COUNT I: CARMACK AMENDMENT LIABILITY, 49 U.S.C. § 14706
*(Plaintiff v. Arrive)*

48. Crown incorporates and realleges each preceding paragraph as if set forth fully herein.

49. The Carmack Amendment creates a private cause of action for shippers against carriers causing loss or damage to the shipper's goods during interstate transportation. The Carmack Amendment imposes strict liability for damages up to the actual loss or injury to property.

50. A "carrier" under the Carmack Amendment includes motor carriers, which are defined as, *inter alia*, "persons providing motor vehicle transportation for compensation." The term "transportation" includes services such as arranging for receipt, delivery, and transfer of property. Thus, the definition of "carrier" encompasses entities that perform services other than physical transportation.

51. Arrive held itself out as the party responsible for the care and delivery of Crown's property, and accepted responsibility for ensuring the safe delivery of the Goods.

52. Arrive accepted and executed, as the "Carrier," the bills of lading governing the shipment of the Goods. *See* Ex. B.

53. Furthermore, the Agreement expressly provides that Arrive shall be liable to Crown for loss, damage, or undelivered lading "while in its possession, custody or control, or that of any Selected Carrier." *See* Ex. A, Cargo Liability. It further provides that Arrive's "possession, custody, or control of lading under this Agreement shall begin when Carrier or Selected Carrier has executed the freight documentation." *Id.*

54. Moreover, Arrive did not inform Crown that SPG would be physically transporting the Goods.

55. Between January and September 2025, Arrive continued to hold itself out as the responsible Carrier during prolonged discussions with Crown regarding the Claim.

56. Thus, Arrive acted as a "carrier" and under the Carmack Amendment is strictly liable for the damage caused to the Goods

57. Due to the damage and contamination of the aluminum can ends caused by the accident, Crown suffered a total loss of the Goods.

58. Arrive is liable to Crown for the full value of the actual loss to the damaged Goods.

**WHEREFORE,** Crown respectfully requests that the Court enter a judgment in its favor in an amount greater than $75,000, together with costs, pre and post judgment interest, and such additional relief as the Court deems proper.

### COUNT II: CARMACK AMENDMENT LIABILITY, 49 U.S.C. § 14706 (IN THE ALTERNATIVE)
(*Plaintiff v. SPG*)

59. Crown incorporates and realleges each preceding paragraph as if set forth fully herein.

60. Arrive arranged for SPG to physically transport the Goods on or about January 19, 2025.

61. SPG took possession, custody and control of the Goods.

62. The SPG truck transporting the Goods was involved in an accident that caused a total loss to the Goods.

63. To the extent Arrive is considered a "broker," rather than a "carrier" under the Carmack Amendment, SPG is strictly liable as a carrier for Crown's loss.

**WHEREFORE,** Crown respectfully requests that the Court enter a judgment in its favor in an amount greater than $75,000, together with costs, pre and post judgment interest, and such additional relief as the Court deems proper.

### COUNT III: BREACH OF CONTRACT (IN THE ALTERNATIVE)
(*Plaintiff v. Arrive*)

64. Crown incorporates and realleges each preceding paragraph as if set forth fully herein.

9

65. To the extent Arrive is considered a "broker" not subject to liability under the Carmack Amendment, Crown may maintain common law claims against Arrive.

66. Under the Agreement, in the event Arrive acted as a "broker," it was required to enter into a contract with its subcontractor setting forth, *inter alia*, the subcontractor's assumption of Carmack Amendment liability, and various insurance requirements. Ex. A, Broker Obligations and Representations. These provisions are material to the Agreement.

67. Despite demand, Arrive has failed to produce a contract with SPG conforming with the requirements of the Agreement. Therefore, upon information and belief, Arrive failed to comply with its obligation to enter into a contract with SPG, which constitutes a breach of the Agreement.

68. Due to Arrive's breach of the Agreement, even if Arrive is considered a "broker" under the Carmack Amendment, it remains directly to Crown for the total loss of the Goods. *See* Ex. A (stating that Arrive "shall remain directly liable to Shipper *pursuant to these terms and conditions* for any and all acts or omission of the Selected Carrier as though Carrier had directly committed such acts or omissions.") (emphasis added).

69. Arrive agreed to transport and deliver or arrange for the transportation and delivery of Crown's goods, safely, legally and efficiently. Ex. A, Transportation Provider Obligations and Representations.

70. Arrive failed to arrange for the safe, legal and efficient transport of the Goods which resulted in a total loss of the Goods.

71. Arrive also failed to ensure that the Goods remained in a sealed and contaminant-free environment after the first inspection. As a result, the damage caused to the goods by the accident were compounded by contamination between January and July 2025, ensuring the Goods were a total loss.

**WHEREFORE,** Crown respectfully requests that the Court enter a judgment in its favor in an amount greater than $75,000, together with costs, pre and post judgment interest, and such additional relief as the Court deems proper.

                                              Respectfully submitted,

                                              **DILWORTH PAXSON LLP**

                                              /s/ Gregory F. Cirillo
                                              Gregory F. Cirillo, Esquire
                                              Matthew T. Gardella, Esquire
                                              1650 Market Street, Suite 1200
                                              Philadelphia, PA  19103
                                              P:  (215) 575-7000
                                              F:  (215) 575-7200
                                              gcirillo@dilworthlaw.com
                                              mgardella@dilworthlaw.com
                                              *Attorneys for Plaintiff Crown Cork & Seal USA, Inc.*

Dated: December 8, 2025